UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GALEN GREGG,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>GUIDEONE INSURANCE COMPANY also known as GUIDEONE MUTUAL INSURANCE COMPANY,<br><br>　　　　　Defendant. | Case No.　1:24-cv-00146-KES-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT:<br><br>DEFENDANT'S REQUEST FOR JUDICIAL NOTICE BE GRANTED IN PART,<br><br>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE DENIED, and<br><br>PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT BE DENIED.<br><br>(ECF Nos. 12, 15).<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

　　　In this pending case, which was removed to this Court on February 1, 2024, Plaintiff Galen Gregg ("Gregg"), proceeding *pro se*, requests a declaratory judgment that Defendant GuideOne Insurance Company ("GuideOne") has a duty to defend and indemnify him in a pending state civil lawsuit that Jane Roe filed against Gregg and his former employer, Truth Tabernacle United Pentecostal Church of Fresno, California ("Truth Tabernacle"). That underlying lawsuit concerns Jane Roe's allegations that Gregg sexually abused her between 1987 and 1993 while Gregg was employed at Truth Tabernacle.

　　　Before the Court are the parties' cross-motions for summary judgment (ECF Nos. 12, 15) and GuideOne's request for judicial notice (ECF No. 12-6). The motions were referred to the

undersigned for issuance of findings and recommendations. (ECF Nos. 14, 24). The Court held a hearing on the motions on March 27, 2025. (ECF No. 28). The parties also submitted supplemental briefing following the hearing. (ECF No. 32, 34).

For the reasons set forth below, the Court recommends granting GuideOne's request for judicial notice in part, and denying GuideOne's motion for summary judgment as well as Gregg's cross-motion for summary judgment.

## I. BACKGROUND

### A. Jane Roe Complaint

In 2022, Jane Roe filed suit in state court against Gregg and Truth Tabernacle, among others, raising allegations of childhood sexual abuse by Gregg when he was employed by Truth Tabernacle and Roe attended a school located on Truth Tabernacle's premises. (Roe complaint (ECF No. 12-7) at 32–52). Roe alleged that the abuse occurred between 1987 and 1993. (Id.) During that time period, Truth Tabernacle was a named insured on comprehensive property, casualty, and general liability insurance policies issued by GuideOne.[1] (ECF No. 1-1 at 5–6).

### B. Plaintiff's Complaint in this Case

In early 2023, after he was served in the Roe lawsuit, Gregg requested that GuideOne provide him with a defense and, if necessary, indemnify him in the case. (Id. at 6, 8). After GuideOne denied Gregg's request for coverage, Gregg filed the instant declaratory judgment action against GuideOne in state court on December 13, 2023. (ECF No. 1-1). In his complaint, Gregg asserts that GuideOne is required to provide him with a defense and fully indemnify him in the Roe lawsuit in accordance with the terms of the insurance policies issued to Truth Tabernacle. (Id.).

On February 1, 2024, GuideOne removed the lawsuit to this Court based on diversity jurisdiction. (ECF No. 1).

### C. Parties Cross-Motions for Summary Judgment

Defendant GuideOne filed a motion for summary judgment on July 29, 2024. (ECF No. 12). In support of its summary judgment motion, GuideOne submitted a request for judicial

---

[1] At the time, GuideOne was operating under the name Preferred Risk Mutual Insurance Company. (See ECF No. 12-3 at 2).

2

1  notice, a memorandum of points and authorities, a statement of undisputed facts, and three
2  declarations. (ECF Nos. 12-1 to 12-6). GuideOne also submitted the following as exhibits: the
3  Roe complaint, the operative complaint in this case, and email correspondence between Gregg
4  and a GuideOne claims adjuster. (ECF No. 12-7).

In its motion, Defendant claims that "each policy issued by Defendant to Truth Tabernacle has included clear language regarding sexual misconduct claims and excludes coverage for claims made against a person who allegedly or actually participates in, directs or knowingly allows to take place any act of sexual misconduct." (ECF No. 21-1, at 11). Thus, Defendant argues:

> Under the issued policies, Defendant has no duty to investigate, settle, defend, or pay any claim brought against a person who allegedly or actually participates in alleged acts of sexual misconduct. (UF No. 5-9.) Acts of sexual misconduct are so clearly carved out and intentionally excluded from the policies that they could not conceivably be considered to be in the "scope" of coverage. (UF No. 5-9.) With only the Jane Roe Complaint to rely on, and the plain absence of any non-sexual allegations against Plaintiff, Defendant has no duty to defend and indemnify Plaintiff in the underlying action. (Jane Roe Complaint. ¶¶ 40-49; UF Nos. 5-9.)
>
> Therefore, there are no triable issues of material fact in Plaintiff's declaratory relief action and Plaintiff's claims that Defendant must provide a defense in the underlying action are unsubstantiated.

(ECF No. 12-1, at p. 12).

On August 12, 2024, Gregg filed a response in opposition to GuideOne's motion for summary judgment and a cross-motion for summary judgment. (ECF No. 15). Gregg separately responded to GuideOne's statement of undisputed facts. (ECF No. 16). Gregg also submitted a declaration and a statement of facts in support of his own cross-motion for summary judgment. (ECF Nos. 17, 18).

In his cross-motion for summary judgment and opposition to GuideOne's motion for summary judgment, Gregg argues that GuideOne has a duty to defend and indemnify him because the Roe lawsuit is a mixed action containing some claims that are at least potentially covered. More specifically, Gregg asserts that GuideOne has a duty to defend and indemnify him because the negligence cause of action in the Roe complaint is "based on misconduct separable from the sexual molestation." (ECF No. 15 at 4–5). Gregg additionally argues in his cross-motion that: (1) GuideOne has a duty to defend and indemnify under principles of adhesion; and (2) the

3

exclusions in Truth Tabernacle's insurance policies only apply to individuals who "actually or personally participate[d] in, direct[ed], or knowingly allow[ed] any act of sexual misconduct," and he denies having engaged in any act of sexual misconduct with Roe. (ECF No. 15 at 6–8).

Following the hearing in this case, the Court requested that the parties file supplemental briefs regarding the language of the policies at the relevant times. In its supplemental brief, Defendant argues that alleged acts of sexual misconduct were excluded from the policy coverage for the policy periods of August 1, 1987, through August 1, 1993. (ECF No. 30 at 2). Defendant states that, contrary to the facts presented in its original motion for summary judgment, the Sexual Misconduct Coverage Form did not undergo revisions to remove the phrase "actually or allegedly" until 1993.[2] Defendant further argues that "[g]iven that the plaintiff of the underlying complaint alleges the incidents of sexual misconduct ceased in 1992, whether or not Mr. Gregg *actually* engaged in the acts is not determinative of the Defendant's duty to defend and indemnify him in the underlying action." (*Id.* at 4). Defendant also argues that the 1993 policy would not require it to defend Plaintiff because the determination of whether it owes a duty to defend is made by comparing the terms of the policy to the complaint, and here the allegations are sexual in nature. (Id. at 6).

In his supplemental reply, Plaintiff objects to Defendant raising a new argument outside the parameters of the Court's instruction and to Defendant's attempt to submit new, unauthenticated evidence. (ECF No. 34 at 2, 4). Plaintiff also argues that Defendant's evidence supports his position: specifically, because the 1990 and 1992 polices do not contain the word allegedly. (Id. at 5).

## II. GUIDEONE'S REQUEST FOR JUDICIAL NOTICE

As a preliminary matter, the Court addresses GuideOne's request for judicial notice. (ECF No. 12-6). Under Federal Rule of Evidence 201, courts may take judicial notice of facts "not subject to reasonable dispute" that are either "(1) generally known within the trial court's

---

[2] Specifically, Defendant states that "[i]t has come to light that the Defendant's Motion for Summary Judgment inaccurately presented the effective dates. Notably, it was in 1993, not 1992, that the Sexual Misconduct Liability Coverage Form underwent a significant revision, removing the phrase 'actually or allegedly.' This discovery is regrettable as it could materially alter the outcome of our motion." (ECF No. 30 at 3).

4

territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

GuideOne initially asks the Court to take judicial notice of two state court filings: (1) the amended complaint in Jane Roe's lawsuit against Gregg (the "Roe complaint")[3]; and (2) Gregg's complaint in this action, which was filed in state court prior to removal to this Court.[4] Generally, a court "may take judicial notice of court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2016). The Court therefore takes judicial notice of the Roe complaint.[5] See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (a court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (citation omitted).

However, it is unnecessary for the Court to take judicial notice of Gregg's complaint against GuideOne because it is the operative complaint in this case. See Schnabel v. Lui, 302 F.3d 1023, 1037 (9th Cir. 2002) ("When a state court action is removed to federal court, the removal is treated as if the original action had been commenced in federal court."). The Court does not need to judicially notice the pleadings in this case to consider them. The operative complaint was attached to GuideOne's notice of removal and is already part of the record in this case. (See ECF No. 1-1 at 5–9).

GuideOne also asks the Court to take judicial notice of a series of email communications between Gregg and a GuideOne claims adjuster. (See ECF No. 12-7 at 53–62). Gregg not only referred to these emails in his complaint, but also attached them as exhibits to his complaint. (See ECF No. 1-1 at 29, 34–40). The Court recommends granting GuideOne's request for judicial notice as to these documents as well.

Accordingly, the Court recommends GuideOne's request for judicial notice be granted as

---

[3] See Jane Roe v. Truth Tabernacle, United Pentecostal Church of Fresno, California et al., Case No. 22CECG03550, Fresno County Superior Court (filed Nov. 7, 2022).

[4] See Galen Gregg v. GuideOne Insurance Company, Case No. 23CECG05089, Fresno County Superior Court (filed Dec. 13, 2023).

[5] Alternatively, because the Roe complaint is an exhibit to Gregg's complaint in this action, it has been incorporated by reference. See Fed. R. Civ. P. 10(c).

5

to the Roe complaint and the email communications between Gregg and GuideOne's claims adjuster, ECF No. 12-7 at 4–24, and 53–62 denied as to the remaining documents. The Court now turns to consider the parties' motions for summary judgment.

## III. LEGAL STANDARDS

### A. Summary Judgment

A party may move for summary judgment on a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

As for Gregg's motion for summary judgment, because he "will have the burden of proof on an issue at trial, [he] must affirmatively demonstrate that no reasonable trier of fact could find other than for [him]." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). As for GuideOne's motion for summary judgment, the following standards apply:

> A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. See 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2727 (3d ed.1998). In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. See High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir. 1990). In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact. See id.

Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). If a

6

party moving for summary judgment "carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." Id. at 1103. And "if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." Id.

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the court need not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citation omitted). Further, the Court may consider other materials in the record not cited to by the parties but is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

In reviewing cross-motions for summary judgment, a court is required to consider each motion on its own merits. Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." Id.; Tulalip Tribes of Wash. v. Wash., 783 F.3d 1151, 1156 (9th Cir. 2015) ("[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them.").

**B. Duty to Defend and Duty to Indemnify under California Law**[6]

Under California law, "a liability insurer owes a broad duty to defend its insured against

---

[6] "In an ordinary diversity case, federal courts apply the substantive law of the forum in which the court is located, including the forum's choice of law rules." Ins. Co. of N. Am. v. Fed. Exp. Corp., 189 F.3d 914, 919 (9th Cir. 1999). "California law applies where no party has suggested that the law of a foreign state should furnish the rule of decision." W. Int'l Syndication Corp. v. Gulf Ins. Co., 222 F. App'x 589, 591 (9th Cir. 2007) (internal citation and quotation marks omitted). Here, the parties agree that California law governs the substantive issues in this case. (See ECF No. 1-1 at 6; ECF No. 12-1 at 2, 10–12; ECF No. 15 at 3–8).

claims that create a potential for indemnity." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993). "[T]he [insurer] must defend a suit which potentially seeks damages within the coverage of the policy." Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 (1966). "The determination [of] whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." Horace Mann, 4 Cal. 4th at 1081. In analyzing the policy, "courts must consider both the [ ] language in the policy, and the endorsements or exclusions affecting coverage, if any, included in the policy terms." Modern Dev. Co. v. Navigators Ins. Co., 111 Cal. App. 4th 932, 939 (2003). "Facts known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even though the face of the complaint does not reflect a potential for liability under the policy." Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287, 296 (1993). "This is so because current pleading rules liberally allow amendment; the third party plaintiff cannot be the arbiter of coverage." Id.; see also Gunderson v. Fire Ins. Exch., 37 Cal. App. 4th 1106, 1114 (1995) ("Our Supreme Court, anticipating imaginative counsel and the likelihood of artful drafting, has indicated that a third party is not the arbiter of the policy's coverage. A corollary to this rule is that the insured may not speculate about unpled third party claims to manufacture coverage.").

"Once the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim." Horace Mann, 4 Cal.4th at 1081; Buss v. Superior Ct., 16 Cal. 4th 35, 47, 939 P.2d 766, 774 (1997) ("[I]n a 'mixed' action, in which some of the claims are at least potentially covered and the others are not, . . . the insurer has a duty to defend the action in its entirety."). "Doubts concerning the potential for coverage and the existence of [a] duty to defend are resolved in favor of the insured." Hanover Ins. Co. v. Paul M. Zagaris, Inc., 714 Fed. App'x 735, 737 (9th Cir. 2018) (quoting Reg'l Steel Corp. v. Liberty Surplus Ins. Corp., 226 Cal. App. 4th 1377, 1389 (2014)).

An "insurer's duty to defend is broader than its duty to indemnify." Buss, 16 Cal. 4th at 46. Under California law, an "insurer's duty to indemnify runs to claims that are actually covered, in light of the facts proved," and "arises only after liability is established." Id. at 45. Thus, the

duty to defend and the duty to indemnify are "correlative" but not "coterminous." Certain Underwriters at Lloyd's of London v. Superior Court, 24 Cal. 4th 945, 958 (2001). "Where there is a duty to defend, there may be a duty to indemnify; but where there is no duty to defend, there cannot be a duty to indemnify." Id.

## IV. ANALYSIS OF PARTIES' SUMMARY JUDGMENT CROSS-MOTIONS

### A. Scope of Claims in the Case

The Court first addresses the parties' arguments as to whether there are any allegations in the underlying Roe case that are separable from her allegation of sexual misconduct, which could give rise to a duty to defend the case under GuideOne's policies.

The California Supreme Court in Horace Mann held than an insurer had a duty to defend where the underlying plaintiff made allegations of negligent misconduct in addition to allegations of sexual misconduct. 4 Cal. 4th at 1083–87; id. at 1086–87 (holding that "an insurer may be required to defend an insured who has sexually molested a child against claims arising from harassing conduct separable from the molestation and not amounting to criminal activity"). However, the court noted that in many cases, a "plaintiff's allegations of molestation and other misconduct may be inseparably intertwined." Id. at 1085. After Horace Mann, courts have regularly found that there is no coverage where allegations of nonsexual conduct are inseparably intertwined with the allegations of sexual conduct. See, e.g., Coit Drapery Cleaners, Inc. v. Sequoia Inc. Co., 14 Cal. App. 4th 1595, 1608 (1993) (finding no duty to defend where the conduct of defendants was inseparably intentional as "part of a consistent course of sexual harassment of an unconsenting victim"); Jane D. v. Ordinary Mutual, 32 Cal. App. 4th 643, 653 (1995) (finding allegations of nonsexual conduct were inseparably intertwined with sexual misconduct because plaintiff alleged defendant misused his counseling position and used information obtained about plaintiff to induce plaintiff to engage in sexual relations with him); Holland v. Travelers Commercial Ins. Co., Case No. 2:19-cv-02604-SVW-RAO, 2020 WL 2527052, at *10 (C.D. Cal. Mar. 30, 2020) ("Courts applying California law regarding the duty to defend have frequently concluded that when allegations in a complaint are 'inseparably intertwined' with noncovered conduct, there is no coverage even where certain allegations or claims might otherwise be covered.").

In the underlying compliant at issue in this case, the Plaintiff, Roe, alleges that she attended church at Truth Tabernacle as a child and was a student in Truth Tabernacle's school. (Roe complaint ¶ 38). According to Roe, Gregg was a teacher, pastor, and administrator at Truth Tabernacle and for at least some of the relevant time period, Gregg served as principal of Truth Tabernacle's school. (Id. ¶¶ 35, 47).

Beginning in 1987, when Roe was approximately twelve years old, she alleges that Gregg began "grooming [her] for the purposes of initiating an inappropriate sexual relationship." (Id. ¶ 43). At the time, Roe was friends with Gregg's daughter and had regular sleepovers at Gregg's residence, during which she alleges Gregg made comments to her that "he wished he could watch her when she bathed." (Id. ¶¶ 44–45). When Gregg became the school principal, Roe alleges he created a "student assistant" role for her, which he used to call her out of class multiple times a day. (Id. ¶ 47). Roe alleges Gregg would lock his office door and "proceed to aggressively kiss [her] in a wrongful sexual manner and commit wrongful sexual abuse," including forcing her to fondle his genitals. (Id.) Roe alleges that Gregg's actions constituted unlawful sexual molestation under Cal. Civ. Proc. Code § 340.1. (Id. at ¶¶ 57, 62). According to Roe, Gregg abused her for five years, or until she turned seventeen years old, when he confessed his acts to church leadership. (Id. ¶ 49).

Roe's amended complaint for damages asserts six causes of action against all defendants, including Gregg: (1) negligence; (2) childhood sexual assault pursuant to Cal. Civ. Proc. Code § 340.1; (3) negligent supervision/failure to warn; (4) negligent hiring/retention; (5) intentional infliction of emotional distress; and (6) breach of statutory duty under Cal. Civ. Code § 51.7. (Id. at ¶¶ 71–108).

Here, upon review of the Roe complaint, the Court finds that there are no allegations separable from the allegations of sexual misconduct that would trigger a duty to defend or indemnify Gregg. The facts "applicable to all counts" (see Roe complaint at 10) consist entirely of allegations of sexual misconduct, specifically that:

- "between the ages of 12 to 17 years old, Gregg groomed and sexually abused [Roe] in his capacity as employee, teacher, pastor, and administrator," id. at ¶ 40;

10

- "Gregg would make comments to [Roe] about how he wished he could watch her when she bathed," id. at ¶ 45;

- "[Roe] was brought to Gregg's office where he would lock the door and proceed to aggressively kiss in a wrongful sexual manner and commit wrongful sexual abuse," id. at ¶ 47;

- "[Roe] was forced to fondle Gregg's genitals when forced into Gregg's office," id. at ¶ 47.[7]

The Court agrees with GuideOne that the above allegations comprise the entire factual basis of all claims asserted in the Roe complaint, including the negligence cause of action.

Although Gregg asserts in his opposition and cross-motion for summary judgment that Roe's negligence claim is based on allegations that are distinct from the above sexual misconduct-related allegations, he does not point to any specific factual allegation that is separable from the childhood sexual abuse and grooming allegations. Nor can he because the negligence cause of action is void of any specific factual allegations.[8] (See Roe complaint at ¶¶ 71–77). The negligence claim is premised entirely on the defendants' breach of duties specific to protecting against childhood sexual abuse – specifically that all defendants had a "duty to protect" Roe from harm, that they had a "duty to control Gregg and to prevent him from sexually assaulting and molesting children," and that they had a "duty to investigate" and "report known or suspected child abuse or neglect" by Gregg to law enforcement. (Id. at ¶¶ 72–75).

In short, the negligence claim is inseparably intertwined with the noncovered claims, such that it does not trigger a duty on the part of GuideOne to defend or indemnify Gregg. See Uhrich v. State Farm Fire & Cas. Co., 109 Cal. App. 4th 598, 615 (2003) ("[W]here allegations are inseparably intertwined with noncovered intentional conduct, there is no coverage."); Marie Y. v. Gen. Star Indem. Co., 2 Cal. Rptr. 3d 135 (2003) (allegations of negligence do not give rise to the duty to indemnify where the negligent conduct is "so intertwined with intentional and willful wrongdoing as to be inseparable from the wrongdoing"); Quan v. Truck Ins. Exch., 67 Cal App.

---

[7] For readability, the Court has made minor alterations such as punctuation and capitalization to the allegations, as quoted, without identifying each change.

[8] The Court notes that the negligence claim includes a general statement that it "incorporates all paragraphs of th[e] [c]omplaint." (See Roe complaint at ¶ 71). The factual allegations in those paragraphs, however, are the facts "applicable to all counts" that the Court has already recited above. (Id. at ¶¶ 40–47).

11

4th 583, 593–601 (1998) (holding that although a complaint asserted four causes of action for sexual assault and battery, intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress, there was no duty to defend where the coverage only extended to "accidental" conduct and "the facts alleged to give rise to that liability [were] virtually the same for all four causes of action").

### B. Contract of Adhesion Argument

The Court next addresses Plaintiff Gregg's argument that the GuideOne Insurance policies should not be enforced by their terms because they are contracts of adhesion.

In support of his argument, Plaintiff relies on the California Supreme Court case of Gray v. Zurich, 65 Cal.2d 263 (1966), which held that the insurer in that case had an obligation to defend a case that accused Plaintiff of assault. In that case, the Court gave the following principles of interpretation for insurance policies:

> When we test the instant policy by these principles we find that its provisions as to the obligation to defend are uncertain and undefined; in the light of the reasonable expectation of the insured, they require the performance of that duty.
>
> In interpreting an insurance policy we apply the general principle that doubts as to meaning must be resolved against the insurer and that any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect.
>
> These principles of interpretation of insurance contracts have found new and vivid restatement in the doctrine of the adhesion contract. As this court has held, a contract entered into between two parties of unequal bargaining strength, expressed in the language of a standardized contract, written by the more powerful bargainer to meet its own needs, and offered to the weaker party on a "take it or leave it" basis carries some consequences that extend beyond orthodox implications. Obligations arising from such a contract inure not alone from the consensual transaction but from the relationship of the parties.
>
> Although courts have long followed the basic precept that they would look to the words of the contract to find the meaning which the parties expected from them, they have also applied the doctrine of the adhesion contract to insurance policies, holding that in view of the disparate bargaining status of the parties we must ascertain that meaning of the contract which the insured would reasonably expect.
>
> When we test the instant policy by these principles we find that its provisions as to the obligation to defend are uncertain and undefined; in the light of the reasonable expectation of the insured, they require the performance of that duty.

Gray v. Zurich Ins. Co., 65 Cal.2d 263, 269–271 (1966) (footnotes omitted).

In response, GuideOne argues that the terms of the policy in this case are clear, that Gregg cannot show that he had no option other than to enter into the contract, and that Gregg is only a third-party beneficiary to Truth Tabernacle's policy so was not in the position of a weaker party forced to accept the terms presented by the stronger party. (ECF No. 21, at 13-14).

Under California law, "[a]n adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.'" OTO, L.L.C. v. Kho, 8 Cal. 5th 111, 126 (2019). The Court agrees that this principle does not apply to Gregg, who did not enter into the policy and is merely a third-party beneficiary of Truth Tabernacle's policy.

To the extent Gregg uses this argument to claim that there is ambiguity in the terms of the exclusionary clause, that argument will be addressed below in connection with the terms of the policy.

**C. Terms of the Policy**

Finally, the Court addresses whether as a matter of undisputed fact, GuideOne has an obligation to defend and/or indemnify Gregg for the underlying Roe lawsuit under the terms of the policies covering Truth Tabernacle at the relevant time.

This undertaking is significantly complicated by the fact that GuideOne has been unable to locate copies of the Preferred Risk policies that were issued to Truth Tabernacle during the policy periods at issue in this case. (ECF 12-3, at 2). Instead, GuideOne's motion for summary judgment relies on the declaration of GuideOne technical underwriter Gabriel Vicente, who conducted a historical data and a records search to determine what the language in those policies would have been.

Mr. Vicente's declaration in support of GuideOne's motion for summary judgment concludes, to the best of his knowledge, as follows:

> To the best of my knowledge, and based on historical data and a records search, beginning in 1986 the insurance policies issued to Truth Tabernacle contained an "Exclusion of All Sexual Misconduct Endorsement" (Form CP 11404 11 85), which provided as follows:

13

> NOTICE
> THIS IS AN EXCLUSION OF COVERAGE FOR PERSONAL INJURY, INCLUDING BODILY INJURY AND MENTAL OR EMOTIONAL PAIN OR ANGUISH, ARISING FROM SEXUAL MISCONDUCT. PLEASE READ THIS ENDORESEMENT CAREFULLY.
> It is agreed and understood that the policy to which this endorsement is attached does not apply to a personal injury, including bodily injury and mental or emotional pain or anguish, sustained by any person arising out of or resulting from any actual alleged act of sexual misconduct of any kind. The Company shall have no duty to investigate, settle, defend or pay any claim or suit asserting any of sexual misconduct or any breach of duty contributing to such act.

To the best of my knowledge, and based on historical data and a records search, the insurance policies issued to Truth Tabernacle from August 1, 1987, to August 1, 1990, also contained a "Sexual Misconduct Liability Coverage Form" (Form CP 12002 04 87), which stated, in pertinent part, the following:

> SEXUAL MISCONDUCT LIABILITY COVERAGE FORM
> 1. INSURING AGREEMENT
> We agree to cover your legal liability for damages because of bodily injury, excluding any sickness or disease, to any person arising out of sexual misconduct which occurs during the policy period. We shall have the right and duty to investigate any claim, as described in this Coverage Form brought against you, and to defend any suit brought against you seeking damages, even if the allegations of the suit are groundless, false or fraudulent, and we may make any settlement we deem expedient. This policy does not apply to claims made or suits brought against any person who allegedly or actually participates in, directs or knowingly allows to take place any act of sexual misconduct. We shall have no obligation or duty to investigate, defend, settle or pay judgments on behalf of any such person as described in this paragraph. . . .
>
> 4. EXCLUSIONS
>
> The insurance granted by this Coverage Form shall not apply:
> 1. To any person who actually or personally participated in, directed, or knowingly allowed any act of sexual misconduct. The Company shall have no duty to investigate, defend or settle any claim or suit brought against any such person as described in this paragraph.

To the best of my knowledge, and based on historical data and a records search, the insurance policies issued to Truth Tabernacle from August 1, 1990, to August 1, 1992, contained a "Sexual Misconduct Liability Coverage Form" (Form CP 12002 01 90), which stated, in pertinent part, the following:

14

> 1. INSURING AGREEMENT
> We agree to cover your legal liability for damages because of bodily injury, excluding any sickness or disease, to any person arising out of sexual misconduct which occurs during the policy period. We shall have the right and duty to investigate any claim, as described in this Coverage Form brought against you, and to defend any suit brought against you seeking damages, even if the allegations of the suit are groundless, false or fraudulent, and we may make any settlement we deem expedient.
>
> This policy does not apply to claims made or suits brought against any person who actually participates in, directs or knowingly allows to take place any act of sexual misconduct. We shall have no obligation or duty to investigate, defend, settle or pay judgments on behalf of any such person as described in this paragraph. . . .
>
> 4. EXCLUSIONS
>
> The insurance granted by this Coverage Form shall not apply:
>
> 1. To any person who actually personally participated in, directed, or knowingly allowed any act of sexual misconduct. The Company shall have no duty to investigate, defend or settle any claim or suit brought against any such person as described in this paragraph.

To the best of my knowledge, and based on historical data and a records search, I am aware that the insurance policies issued to Truth Tabernacle from August 1, 1992, to August 1, 1994, contained a "Sexual Misconduct Liability Coverage Form" (Form CP 12002 01 92), which stated, in pertinent part, the following:

> 1. INSURING AGREEMENT
> We agree to cover your legal liability for damages because of bodily injury, sickness or disease, including death resulting from any of these at any time; mental anguish or emotional distress sustained by a person as a result of sexual misconduct which first commences during the policy period. We shall have the right and duty to investigate any claim, as described in this Coverage Form brought against you, and to defend any suit brought against you seeking damages, even if the allegations of the suit are groundless, false or fraudulent, and we may make any settlement we deem expedient.
>
> This policy does not apply to claims made or suits brought against a person who actually participates in, directs or knowingly allows to take place any act of sexual misconduct. We shall have no obligation or duty to investigate, defend, settle or pay judgments on behalf of any such person as described in this paragraph. . . .
>
> 4. EXCLUSIONS
> The insurance granted by this Coverage Form shall not apply:

15

> 1. To any person who actually personally participated in, directed, or knowingly allowed any act of sexual misconduct. The Company shall have no duty to investigate, defend or settle any claim or suit brought against any such person as described in this paragraph.

(ECF No. 12-3, at p. 2-8).

Based on this language, GuideOne's motion for summary judgment argues that "each policy issued by Defendant to Truth Tabernacle has included clear language regarding sexual misconduct claims and excludes coverage for claims made against a person who allegedly or actually participates in, directs or knowingly allows to take place any act of sexual misconduct." (ECF No. 12-1, at p. 11).

In Plaintiff Gregg's opposition and cross-motion for summary judgment, he argues that he is entitled to coverage under the policy terms because he asserts that Jane Roe's allegations in the underlying suit are groundless, false, and fraudulent, and are thus covered under the language in the Sexual Misconduct Liability Coverage Form," which states in relevant part: "We shall have the right and duty to investigate any claim, as described in this Coverage Form brought against you, and to defend any suit brought against you seeking damages, *even if the allegations of the suit are groundless, false or fraudulent*, and we may make any settlement we deem expedient." (ECF No. 15, at p. 5) (emphasis added). Moreover, Gregg states that the exclusion regarding "any person *actually personally participated in*, directed, or knowingly allowed any act of sexual misconduct," does not exclude coverage in this case because he contends that he did not actually participate in such actions. (ECF No. 15, at p. 6) (emphasis added).

In GuideOne's reply in support of its motion for summary judgment, it argues that "[e]ach of the policies issued by GuideOne to Truth Tabernacle contains a provision regarding lack of coverage for the actual or alleged perpetrator of sexual misconduct." (ECF No. 21, at p. 11). However, some of the provisions it then cites do not in fact support this claim. Specifically, GuideOne itself represents that Policies issued by Defendant from August 1, 1990 to August 1, 1992 contained a "Sexual Misconduct Liability Coverage Form" which stated: "This policy does not apply to claims made or suits brought against any person *who actually participates in*, directs or knowingly allows to take place *any act of sexual misconduct*." (ECF No. 21, at p. 12) (emphasis added). That language does not exclude coverage for "*alleged*" sexual misconduct.

16

GuideOne's reply brief also represented that Policies issued by Defendant from August 1, 1992 to August 1, 1994 contained a "Sexual Misconduct Liability Coverage Form" which stated, in pertinent part: "This policy does not apply to claims made or suits brought *against a person who actually participates* in, directs or knowingly allows to take place *any act of sexual misconduct*." (ECF No. 21, at p. 12) (emphasis added). Again, this exclusion does not include alleged sexual misconduct. Moreover, this language contrasts with language in other policies, such as the Policies issued by Defendant from August 1, 1987 to August 1, 1990 that contained a "Sexual Misconduct Liability Coverage Form" which stated, in pertinent part: "This policy does not apply to claims made or suits brought against *any person who allegedly or actually participates in,* directs or knowingly allows to take place *any act of sexual misconduct*." (ECF No. 21, at p. 12) (emphasis added). Thus, according to GuideOne's summary judgment motion and reply brief, some of the policies for the relevant period contain an exclusion for lawsuits against someone who "actually participates" in sexual misconduct, whiles others exclude coverage for lawsuits against someone who "*allegedly or actually participates"* in sexual misconduct.

GuideOne's reply also argued that the difference in language between "allegedly or actually" and "actually" is immaterial because "At the time of the Jane Roe Complaint, the only facts known to GuideOne were those brought upon by the complaint and alleged under penalty of perjury," and thus Gregg's current denial of those allegations are not relevant to GuideOne's coverage decision. (ECF No. 21, p. 13).

At the hearing on this motion, the Court addressed the differing language in the policies and invited supplemental briefing on this issue. In GuideOne's supplemental brief filed after the hearing, it stated as follows:

> The defendant wishes to take this opportunity to clarify the periods during which specific Sexual Misconduct policies were in effect. It has come to light that the Defendant's Motion for Summary Judgment inaccurately presented the effective dates. Notably, it was in 1993, not 1992, that the Sexual Misconduct Liability Coverage Form underwent a significant revision, removing the phrase "actually or allegedly." This discovery is regrettable as it could materially alter the outcome of our motion.

(ECF No. 30, at p. 3). Notably, GuideOne's supplemental brief does not include any declaration attesting to the accuracy of these statements, or verification of the dates that apply to the policies

attached.

GuideOne's supplemental brief then argues that since Jane Roe alleges that the sexual assault occurred from 1987 through 1992, the relevant policies would have excluded coverage for alleged, in addition to actual, sexual misconduct. It also argues that even the later policies, which exclude coverage only for actual sexual misconduct, concern misconduct "which first commences" during the policy period. It thus argues that Roe's lawsuit would not be covered because it concerns conduct that commenced in 1987, and under the policy in place at that time, the relevant exclusion included alleged and actual sexual misconduct.

Plaintiff filed a response to GuideOne's supplemental brief, arguing that GuideOne's arguments were new and not raised in its motion for summary judgment and that GuideOne's new claim about the dates of the policies are not supported by any person with personal knowledge.

Upon review of the parties' evidence, the Court recommends denying summary judgment because there is a dispute of fact regarding which policies that were in place during the relevant period and whether they exclude coverage for alleged, as well as actual, sexual misconduct. Again, GuideOne has not located the actual policies that were in place at the time. Instead, GuideOne initially relied on the declaration of a technical underwriter regarding what policies would have been in place at different times. According to that declaration, some of the policies excluded coverage for lawsuits that assert or allege sexual misconduct, while other policies only excluded coverage for lawsuits concerning actual sexual misconduct. Notably, GuideOne's motion for summary judgment does not take any position on whether Roe's allegations are true or not, and Plaintiff has submitted his own declaration that Roe's allegations are false allegations, and do not concern actual sexual misconduct. Thus, GuideOne has not met its burden of presenting evidence that it has no duty to defend or indemnify based on the clear language of the relevant policies.

Although GuideOne's supplemental brief now claims that it made an error, and that all relevant policies excluded coverage for alleged in addition to actual acts of sexual misconduct, its brief does not cite to any authenticated evidence or declaration from a person with personal knowledge. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1989) ("[i]t is well established that unauthenticated documents cannot be considered on a motion

for summary judgment."). It also contradicts the evidence previously submitted by GuideOne itself in support of its motion.[9]

The Court also recommends denying Plaintiff's Cross-Motion for Summary Judgment. Again, there is a dispute of fact regarding the language of the policies in place at the time, and whether and to what extent they exclude coverage for allegations of sexual misconduct, in addition to actual sexual misconduct. There is also a dispute of fact regarding whether the Jane Roe allegations are true or not, i.e., whether the lawsuit concerns mere allegations of sexual misconduct, or actual sexual misconduct. In Plaintiff's statement of purported undisputed facts, Plaintiff states that "[t]here is no assertion by Defendant GuideOne that Plaintiff participated in, directed or knowingly allowed to take place any act of sexual misconduct," and GuideOne's response to this purported fact states "[t]he evidence presented does not support the statement." (ECF No. 21-1, at p. 20). Plaintiff also includes the purported fact that "Plaintiff asserts the allegations of the underlying suit are groundless, false and fraudulent and that he did not actually or personally participate in, direct, or knowingly allow any act of sexual misconduct," ECF No. 16 at p. 8, which GuideOne agrees is "undisputed." (ECF No. 21-1, at p. 20). Additionally, the Jane Roe complaint claiming that Plaintiff engaged in actual sexual misconduct is in evidence. Thus, there is a dispute of fact regarding whether Jane Roe's lawsuit concerns actual, or only alleged, sexual misconduct. That dispute also precludes summary judgment on behalf of Plaintiff.

## V.    CONCLUSION AND RECOMMENDATION

Accordingly, based on the foregoing, it is RECOMMENDED that:

1. Defendant GuideOne Insurance Company's request for judicial notice (ECF No. 12-6) be GRANTED as to the Roe complaint and the email communications between Gregg and GuideOne claims adjuster, (ECF No. 12-7 at 4-24, and 53–62), and denied as to the remaining document;

2. Defendant GuideOne Insurance Company's motion for summary judgment (ECF

---

[9] GuideOne's argument raised in its supplemental brief, that other language in the policy regarding the commencement of the sexual misconduct would independently exclude coverage for Roe's claims, is newly raised on reply and need not be addressed by the Court. Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) (affirming district court's refusal to consider an argument raised for the first time in reply).

No. 12) be DENIED; and

3. Plaintiff Galen Gregg's cross-motion for summary judgment (ECF No. 15) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The objections shall not exceed more than fifteen (15) pages, including exhibits. Any response to the objections shall be served and filed within fourteen (14) days after service of the objections.

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **May 28, 2025**           /s/ Erica P. Grosjean
                                 UNITED STATES MAGISTRATE JUDGE